851 F.2d 1501
 271 U.S.App.D.C. 274
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
James E. HUNSUCKER and Gary W. Silvey, Petitioners,
v.
NATIONAL TRANSPORTATION SAFETY BOARD, et al., Respondents.
 No. 86-1509.
 United States Court of Appeals, District of Columbia Circuit.
 June 29, 1988.
 
 Before MIKVA, EDWARDS and WILLIAMS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record on a petition for review of a decision of the National Transportation Safety Board and on the briefs filed by the parties. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir. Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED by the court that the petition for review be denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 This case presents the issue of whether the National Transportation Safety Board (NTSB) abused its discretion in upholding the Federal Aviation Agency's (FAA) sanctions against Petitioners. The FAA found that the pilots had violated Section 121.3 and Section 91.9 of the Federal Aviation Regulations ("FAR") (14 C.F.R. Sec. 121.3 and 14 C.F.R. Sec. 91.9) by not following their own company's operations specifications; an administrative law judge and the NTSB affirmed. Because the operations specifications are clear and unambiguous and it is clear that Petitioners did not follow the operation specifications, we deny the petition for review.
 
 
 5
 On July 31, 1984, Petitioners, James Hunsucker and Gary Silvey, piloted Ozark Airlines Flight 784 from Joplin to Columbia, Missouri. Captain Hunsucker was the pilot in command and operated the radio, while First Officer Silvey flew the plane. The flight was scheduled to land at the Columbia airport during an uncontrolled time when the airport control tower was closed. However, there was an FAA flight service station ("FSS") at the Columbia airport capable of giving weather and traffic information but with no authority over any aircraft.
 
 
 6
 During most of the flight, Petitioners flew under Instrument Flight Rules and were under the radar control of Air Route Traffic Control ("ARTC") in Olathe, Kansas. The ARTC was in direct contact with the Columbia FSS and relayed weather and visibility information to Petitioners. It last gave Petitioners a radar vector when the plane was about thirteen minutes from Columbia. A little over one minute before landing, the pilots terminated ARTC's radar services and proceeded to land under Visual Flight Rules. At no time did Petitioners obtain local traffic advisory information. Hunsucker testified that he unsuccessfully tried to inform the Columbia FSS of his landing; yet this attempted communication did not appear on the taped FSS communications. An employee of the FSS said that no attempt at communication was made by the Petitioners.
 
 
 7
 At about the same time that Petitioners were heading for runway 2 to land, a small plane piloted by Norbert Pierson was taxiing on runway 2 towards Petitioners in order to take off. Fortunately, Pierson spotted Ozark 784 and taxied off the runway into a grass area as Petitioners landed. Petitioners testified that they did not see Pierson's plane until after they were already on the ground. The Columbia FSS feared that a head on collision might have occurred in these circumstances.
 
 
 8
 The FAA suspended Petitioners' Pilot's Certificates for 30 days for violation of FAR Secs. 121.3(a) and 91.9 (14 C.F.R. Sec. 121.3(a) and 14 C.F.R. Sec. 91.9). The FAA waived actual suspension under the Aviation Safety Reporting Program but entered the violations on Petitioners' flying records. Petitioners appealed to an Administrative Law Judge who affirmed the FAA's order on July 9, 1985. The NTSB again affirmed the FAA's ruling in NTSB Order No. EA-2347. Petitioners then sought review in this court under 49 U.S.C. Secs. 1486(a) and 1903(d).
 
 
 9
 FAR Sec. 121.3(a) requires air carriers, such as Ozark Airlines, to promulgate operations specifications delineating procedures for their pilots to follow. The same regulation forbids any pilot from violating his airline's specifications. FAR Sec. 91.9 sanctions careless or reckless flying. The FAA found that Petitioners violated these two requirements by failing to abide by Sections 12(a) and 13(a) of Ozark's operation specifications. Petitioners disagree with the FAA's interpretation of Ozark's specifications and claim that the specifications are too vague and ambiguous to be enforceable. This court's review of the NTSB decision is limited by 5 U.S.C. Sec. 706. The agency ruling must be arbitrary, capricious, not supported by substantial evidence, or otherwise an abuse of the agency's discretion for it to be overturned.
 
 A. Section 13(a)
 
 10
 Ozark's Operations Specifications Section 13(a) states that "operations will not be conducted at regular airports ... without airport traffic control tower service unless flights are furnished local traffic advisory information through" one of several sources [emphasis added]. Petitioners claim that they did receive weather information indirectly from Columbia's FSS through ARTC, but do not even allege that they obtained local traffic information. The communications transcripts support the fact that Petitioners never asked for or received information about the air traffic around Columbia's airport from any source. Petitioners failed to follow the express, unambiguous language of Section 13(a), and therefore the FAA had ample evidence to hold that Petitioners violated FAR Secs. 121.3 and 91.9. The NTSB's decision could be sustained on this basis alone.
 
 B. Section 12(a)
 
 11
 Ozark's Operations Specifications Section 12(a) allows a pilot to operate under Visual Flight Rules provided the pilot is receiving radar vectors from an Air Traffic Control station or, if at an uncontrolled airport, the pilot is in communication with an airport traffic advisory service (such as the flight service station). Petitioners claim that they followed this rule in that they were in contact and receiving radar vectors from the ARTC, which was directly in contact with the Columbia FSS. However, Petitioners admittedly received their last radar vector and ended communication with the ARTC while still flying under Instrument Flight Rules. When, within two minutes of landing, Petitioners switched to Visual Flight Rules, they were not currently receiving radar vectors nor in communication with an airport traffic advisory service. This clearly violated Section 12(a); therefore, the FAA did not abuse its discretion.
 
 
 12
 C. Conflict Between Ozark's Operations Specifications and Operations Manual
 
 
 13
 Petitioners also allege that Ozark's Operations Manual is inconsistent with its Operations Specifications, and therefore both can not be followed simultaneously. The sections of the Operations Manual cited by Petitioners recommend that pilots communicate with an FSS regarding additional traffic information, whenever possible, and require the use of a listening watch for information on local traffic whenever possible. This is not inconsistent with the operations specifications because the manual's rules concern only additional traffic information. It is undisputed that Petitioners did not obtain any traffic information at all. In addition, Petitioners could have followed both the manual and the specifications; it was certainly possible for the pilots to obtain traffic information from the Columbia FSS, either directly or from the ARTC which was in phone contact with the FSS. Finally, the FAR explicitly requires the following of the Operations Specification, not the manual. Even if the two are interpreted to be inconsistent, Petitioners had notice through FAR Sec. 121.3 to follow the Operations Specifications.
 
 D. Other Claims
 
 14
 We have considered Petitioners' remaining objections--namely, that the fault lies with the pilot of the other plane who tried to take off during Petitioners' landing, that the Operations Specifications are too vague to be enforced, and that the sanctions imposed on either pilot (or on both) were too harsh. We find these claims to be without merit. Accordingly, the petition for review of the NTSB order is denied.